**Hobart G. WALKER, Plaintiff,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Defendant.**

Civ. A. No. 82–3603.

United States District Court, District of Columbia.

Sept. 13, 1983.

Edward H. Passman, Passman & Broida, Washington, D.C., for plaintiff.

Stanley S. Harris, U.S. Atty., Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This employment discrimination case is before the Court on cross motions for summary judgment. Plaintiff argues that he was fired by the Federal Bureau of Investigation (FBI) because of his physical handicap in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 792 *et seq.* Defendant, in turn, argues that on facts undisputed in the record it is clear that plaintiff cannot make out a prima facie case of employment discrimination on the basis of a physical handicap. For reasons given below, an accompanying Order will grant summary judgment to the defendant.

No material fact is disputed by the parties. Plaintiff Hobart Walker worked at the FBI Academy in Quantico, Virginia, from 1974 to 1978. From May, 1977 to August, 1978, he was employed as an Operating Engineer Helper. Strenuous manual labor is a significant component of the duties of such a position. On October 26, 1977, plaintiff experienced chest pains while at work. He was admitted to Mary Washington Hospital that afternoon and released the next day. Plaintiff was further examined by a cardiologist, Dr. Manochehr Sobhany, on November 3, 1977, and admitted to the hospital for a five-day stay. He returned to work in late November.

In early January, 1978, Dr. Sobhany talked with and wrote to plaintiff's immediate supervisor, Luke Tucker. Sobhany told Tucker that plaintiff had a cardiac condition with "moderately severe angina attacks," that he should not be required to work at night, and that he could still perform strenuous labor as long as he was allowed to rest when tired. Tucker then took plaintiff off all night shifts and assigned him to conduct "complex tours," a less strenuous job that involved reading meters in the basement of buildings and checking whether exhaust fans on the roofs were operating correctly. Plaintiff continued to experience discomfort, and was again examined by Dr. Sobhany in early March. Sobhany wrote to Tucker on March 9, 1978, stating that plaintiff "has severe coronary artery disease and significant arrythmia with mild exercise and stress" and that "I recommend changing his job to a desk position without any stress." The FBI then scheduled plaintiff for a fitness-for-duty physical examination at the National Naval Medical Center. The examination was conducted in May, and the written report of the examining physician, forwarded to the FBI, indicated that plaintiff had coronary artery disease and should be assigned limited duties with no strenuous activities. Plaintiff was assigned to a desk position in Mr. Tucker's office in July and discharged for medical disability on August 25, 1978, after failing tests for clerical positions.

Unknown to the FBI, plaintiff's medical condition was not as severe as plaintiff's doctor had represented. Upon consultation with Dr. Patrick Bowen in April, 1978, Dr. Sobhany concluded that plaintiff's problems were "emotional changes" rather than

medical problems. Dr. Sobhany neglected to communicate this to the FBI. Doctors at the National Naval Medical Center eventually reached a similar conclusion after consultation with Dr. Sobhany: a memorandum written by one of them in late July indicates that plaintiff's artery disease is "minimal" and that "it may even be questionable that his angina is as severe as is reported." Unfortunately, none of this information was conveyed to the FBI prior to plaintiff's termination. When legal proceedings within the agency failed to secure plaintiff's reinstatement, he brought this suit in district court under the Rehabilitation Act of 1973, 29 U.S.C. § 792 et seq.

■ Among other things, the Rehabilitation Act of 1973 prohibits federal agencies from discriminating against "otherwise qualified handicapped individuals." 29 U.S.C. § 794. 1978 amendments to the Act made the enforcement apparatus of Title VII of the Civil Rights Act of 1964 available to victims of such discrimination. See 29 U.S.C. § 794a; Shirey v. Devine, 670 F.2d 1188 (D.C.Cir.1982). To receive the Act's protection, however, an employee first must establish that he or she is an "otherwise qualified" handicapped individual. An "otherwise qualified" person is one who can meet all of a job's requirements "in spite of his handicap." Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). This standard has been reiterated both by our Court of Appeals and in regulations of the Equal Employment Opportunity Commission. See Shirey v. Devine, supra, 670 F.2d at 1203–04; 29 C.F.R. § 1613.702(f).

Defendant and plaintiff agree that plaintiff was apparently unable to perform the duties of an Operating Engineer Helper at the time he was terminated. The only issue of law before the Court is whether the FBI owed plaintiff a duty to inquire further into his medical condition and to uncover the fact that the diagnosis of both plaintiff's cardiologist and the National Naval Medical Center was in error. Plaintiff's counsel was unable at oral argument to cite any case, statute, or regulation imposing such a

duty. The only case on point, Cook v. United States Dept. of Labor, 688 F.2d 669 (9th Cir.1983), supports an opposite conclusion. In Cook, a jailer was fired after his cardiologist told his employer, a city government funded by the Department of Labor, that he might have angina pectoris. The city's doctor then recommended a transfer to a less strenuous position. When plaintiff refused the transfer, he was fired. In his subsequent suit for reinstatement under the Rehabilitation Act of 1973, the Ninth Circuit concluded that

> We need not decide at this time what burden an employer bears when the existence or consequence of a handicap is disputed. In this case, Cook informed the city that his doctor said he might have angina, and his records reflected angina. Faced with his substantial and uncontradicted evidence, the city had no duty to investigate further.

688 F.2d at 671.

■ The evidence relied upon by the FBI in determining that plaintiff had a disqualifying ailment was, if anything, more substantial than the evidence described as "substantial" in Cook. The Court therefore concludes that the FBI was reasonable in concluding that plaintiff was not qualified for his position. Whatever duty the agency may have had to inquire into the accuracy of plaintiff's doctor's diagnosis (and the Court makes no finding that such a duty necessarily exists), it was more than adequately complied with by referring the plaintiff to the National Naval Medical Center for an examination that confirmed that diagnosis. Defendant's decision to fire plaintiff was therefore justified, and cannot be challenged under the Rehabilitation Act.

Of course, had the true nature of plaintiff's emotional problems been known by the FBI, it is possible that plaintiff could establish that he is an "otherwise qualified" handicapped individual. See Doe v. New York University, 666 F.2d 761 (2d Cir.1981). But where the only facts before the employer establish without contradiction that plaintiff is not "otherwise qualified," the employer cannot be accused of discrimina-

tion against an "otherwise qualified" employee when it chooses to fire him.

There being no material issue of fact in dispute, and it appearing that the defendant is entitled to judgment as a matter of law, an accompanying Order grants summary judgment for the defendant. F.R.Civ.P. 56(c).